UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LEWIS BERNARD WILLIAMS JR., | CASE NO. 16CV374 |
| Plaintiff, | JUDGE MICHAEL R. BARRETT |
| vs. | |
| TARA DUNN, XCENTRIC VENTURES LLC, | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Xcentric Ventures, LLC's ("Xcentric") Motion to Dismiss (Doc. 14) and the responsive memoranda thereto. (Docs. 21, 22, 38, 40). The Court held a hearing on October 28, 2016.[1]

**I. BACKGROUND**

For purposes of this motion, the allegations in Plaintiff's Complaint are accepted as true. Plaintiff, a former professional football player, learned his kidneys were failing in 2013. (Doc. 1, PageID 2). As a result, Plaintiff participated in an online kidney donor website. (Id.). In June 2013, Defendant Tara Dunn contacted Plaintiff as a potential donor. (Id.). In July 2013, Dunn traveled to Mississippi to meet Plaintiff. (Id.). Around that same time, Dunn was tested to see whether she was a match to donate a kidney to Plaintiff. (Id. at PageID 3). She was rejected as a physical donor. (Id.). Approximately one year later, in June 2014, Dunn posted on a website—Ripoff Report—accusing Plaintiff of being a con man. (Id.). Her post was updated on September 30, 2014. (Id.). In her post, Dunn specifically accused Plaintiff of stealing over

---

[1] Plaintiff did not appear at the hearing, and the motion was submitted on the briefs without further argument.

$40,000 from women, called him a drug addict, and accused him of using women for their money and organs.[2] (Id.).

According to the Complaint, the Ripoff Report is a heavily trafficked website where consumers can review vendors and report complaints. (Id.). Ripoff Report is owned and operated by Defendant Xcentric. (Id. at PageID 1). Plaintiff contacted the editor of Ripoff Report, Edward Magedson, and requested that Dunn's post be taken down. (Id. at PageID 4). Despite initially promising Plaintiff that he would help Plaintiff with the postings, Magedson notified Plaintiff in June 2015 that he would not edit, modify or remove the posting. (Id. at PageID 5). Dunn's posts remain on Ripoff Report. (Id. at PageID 4).

Plaintiff brings claims against Dunn for defamation, interference with a business relationship, as well as a claim against both Dunn and Xcentric for publication of private facts. In addition, Plaintiff brings claims against Xcentric for intentional misrepresentation and estoppel.

Relevant to the instant motion, Plaintiff, a citizen of Minneapolis, Minnesota, first brought this lawsuit against Dunn and Xcentric in the Eastern District of Kentucky. Xcentric is an Arizona company, and while Plaintiff initially thought that Dunn was a citizen of Kentucky, Plaintiff subsequently learned that Dunn likely resides in Ohio.[3] Accordingly, Plaintiff requested that this matter be transferred to this Court; that request was granted.

Xcentric filed the instant motion to dismiss arguing that this Court lacks personal jurisdiction over Xcentric because Xcentric is an Arizona-based company.[4]

---

[2] Although not relevant to this motion, the Complaint also quotes specific portions of Dunn's post that Plaintiff alleges are defamatory. (*See* Doc. 1, PageID 3-4).
[3] Dunn's last known business known address was in Covington, Kentucky at the time Plaintiff's Complaint was filed. (Doc. 28, PageID 119).
[4] Xcentric also argues Plaintiff's claims against is should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because this Court lacks personal jurisdiction over Plaintiff's claims against Xcentric, the undersigned does not address Xcentric's arguments under Rule 12(b)(6).

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction over each defendant independently. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974). "[P]ersonal jurisdiction over a defendant arises from 'certain minimum contacts with [the forum] such that maintenance of suit does not offend traditional notions of fair play and substantial justice.'" *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted).

When there has been no evidentiary hearing on the issue of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Moreover, a court must consider the pleadings and affidavits in a light most favorable to the plaintiff, and must ignore facts presented by the defendant that conflict with those offered by the plaintiff. *Id.* To do so, a plaintiff can "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Nat'l Ass'n*, 875 F.2d 1212, 1214 (3d Cir. 1987)).

Personal jurisdiction can be "general" or "specific" depending on the nature of the defendant's contact with a state. *Bird,* 289 F.3d at 873. The distinction between general and specific jurisdiction exists for purposes of a due process analysis. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992).

"General jurisdiction exists over a defendant when his 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Cadle Co. v. Schlichtmann*, 123 Fed.Appx. 675, at *2 (citing *Bird*, 289 F.3d at 873). Specific jurisdiction, on the other hand, exists over a defendant if his contacts with the forum state are related to the specific case. *Id.* The Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Southern Machine Co. v. Mahasco Ind., Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

### III.  ANALYSIS

"When the defendant's alleged contact with the forum state occurs via the internet, the plaintiff faces an initial hurdle in showing *where* this internet conduct took place for jurisdictional purposes." *Cadle*, 123 Fed. Appx at *2. Here, the undersigned must determine whether this Court has personal jurisdiction over an Arizona company that has generated—by way of internet posters not associated with Xcentric—thousands of internet postings referencing Ohio consumers or companies, but otherwise, has no specific ties to Ohio.

"When attempting to obtain jurisdiction over a person not physically present within the state at the time of service in a diversity case, a district court applies the state's long-arm statute". *Cadle Co. v. Schlichtmann*, 123 Fed.Appx. 675, at *2 (citing *Calphalon Corp.,* 228 F.3d 718, 721 (6th Cir. 2000)). Ohio's long-arm statute, Ohio Revised Code §2307.382, provides in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> \* \* \*
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> \* \* \*
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A)(1), (4), (6).

The Sixth Circuit has held that maintaining a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction. *Bird*, 289 F.3d at 874 (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419–20 (9th Cir.1997). This is true even if the website facilitates defendants to do business with residents of the forum state because physical presence within the state's borders is still lacking. *Id.*

Nevertheless, Plaintiff argues Xcentric is subject to general jurisdiction in Ohio, asserting that Ohio's long-arm status authorizes jurisdiction by Xcentric transacting business within the state.[5] Specifically, Plaintiff argues that Xcentric solicits complaints through its website, and then offers a service to fix the bad publicity generated as a result of the complaint for a fee. He argues that process systemically engages all of the parties in the interaction and thus, is

---

[5] This case was initially filed in the Eastern District of Kentucky. It was transferred to this Court on March 10, 2016 (*See* Doc. 32). Accordingly, Plaintiff argues in its response that Kentucky's long-arm statute authorizes jurisdiction.

interacting continuously and systematically with Ohio. Plaintiff argues this is sufficient to confer general jurisdiction over Xcentric.

This paid service that Plaintiff references—the Corporate Advocacy Program ("CAP")—is performed by Xcentric in Arizona. (Doc. 38-1 at ¶¶ 6-7). Xcentric communicates with participates in CAP by email or telephone. (Id. at ¶ 8). Plaintiff argues, however, that Xcentric contacts Ohio businesses to solicit business for CAP because it sends direct emails to companies who have been featured on Ripoff Report. (Doc. 40-1, ¶¶ 4, 6). Plaintiff attaches an example of a direct email sent by Ripoff Report to a company located in Northeast Ohio – a company contacted by Plaintiff for purposes of this motion. (Doc. 40-1, PageID 173-78). Plaintiff and Xcentric agree that just over 14,000 reports reference Ohio in some way.[6] While the Court cannot infer, both parties seem to agree that each Ohio business (or resident) referenced by a poster in a negative manner would have received an email offering CAP's service. According to Magedson, however, even if all of the reports referencing Ohio were actually about Ohio businesses, then approximately 99.3% of the reports on Ripoff Report are not about Ohio businesses. (Doc. 38-1, ¶ 12).

When considering the pleadings and affidavits in a light most favorable to Plaintiff, the Court finds that Plaintiff has arguably established that Xcentric transacts business in Ohio or contracts to provide a service in Ohio, pursuant to Ohio's long-arm statute. Upon consideration, however, the Court finds that sending these emails does not constitute contact with Ohio that is of such a continuous and systematic nature as to confer general jurisdiction. The emails do not appear to be tailored emails; rather, they are form emails sent to every company or individual

---

[6] Xcentric explains that this number includes both reports about Ohio businesses and reports submitted by users who listed Ohio as their location. Accordingly, not of all of those reports necessarily relate to a business or individuals in Ohio. For purposes of this motion, however, the Court assumes that over 14,000 reports relate to complaints about Ohio businesses.

targeted by a Ripoff Report poster, regardless of the state. (*See* Doc. 40-1, PageID 173-78). Similarly, Xcentric asserts, and Plaintiff does not dispute, that none of Xcentic's advertisements specifically target Ohio. (Id. at ¶ 9). For these reasons, Xcentric is not subject to general jurisdiction in Ohio.

The next step then would be to determine whether Xcentric is subject to specific jurisdiction. In this case, however, Plaintiff does not contest that specific personal jurisdiction is not satisfied. Xcentric argues that as a result, Plaintiff has waived any claim of specific jurisdiction. (Doc. 22, PageID 105). The Court briefly addresses specific jurisdiction nonetheless.

To begin, it is at least debatable that Xcentric purposely availed itself of Ohio privileges by directly contacting Ohio businesses via email to solicit a service. Even if that is true, however, the claims against Xcentric must arise out of Xcentric's activities in Ohio. *See Reynolds*, 23 F.3d at 1116-17. Here, the alleged tortious conduct by Xcentric arises out of conversations between Plaintiff and Magedson. (*See generally* Doc. 1, PageID 6). Plaintiff is a resident of Minnesota. Magedson is a resident of Arizona.[7] Likewise, the conversations arose from material posted on a website owned by an Arizona company. It is undisputed that neither Plaintiff nor Xcentric ever set foot in Ohio, at least with respect to the tortious conduct alleged in this case. Further, Xcentric does not own any assets in Ohio, does not have any officers in Ohio, and does not have any employees or agents in Ohio. (Doc. 38-1, ¶ 4). Likewise, Xcentric's conduct or the alleged consequences caused by Xcentric have no connection to Ohio as to make the exercise of jurisdiction reasonable. In short, because the alleged tortious conduct did not

---

[7] Defendant Tara Dunn is believed to be an Ohio resident. As of the date of this Order, Dunn has not been served, and whether the Court has personal jurisdiction over her is not at issue.

occur in Ohio, the Court finds that any contact with Ohio is not sufficient to confer specific personal jurisdiction over Xcentric.

## CONCLUSION

Consistent with the foregoing, this Court lacks personal jurisdiction over Xcentric. While the Court is aware that Plaintiff need only establish a *prima facie* case for jurisdiction, Plaintiff has not set forth with reasonable particularity sufficient contacts between Xcentric and Ohio to confer personal jurisdiction. Accordingly, it is hereby ordered that Xcentric's Motion to Dismiss (Doc. 14) is **GRANTED**.

s/*Michael R. Barrett*
MICHAEL R BARRETT
United States District Judge